IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY RODRIGUEZ,<br><br>Defendant. | CR 08–104–BLG–SPW<br><br><br>ORDER |

On October 15, 2024, Defendant Anthony Rodriguez filed a pro se motion under 18 U.S.C. § 3582(c)(1)(A) seeking to reduce his 300-month federal drug sentence. (Doc. 72; *see* Doc. 56 (Amend. Judg.).) Counsel was appointed, (Docs. 73, 74), and an amended motion was filed on April 23, 2025, (Doc. 84; *see* Doc. 87). The government opposes. (Doc. 88.) Rodriguez's projected release date is December 22, 2027. *See* Inmate Locator, http://www.bop.gov/ inmateloc (accessed July 18, 2025). For the reasons stated below, Rodriguez's motion is denied.

## ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable

1

policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). The Court must also find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG §1B1.13(a)(2).

Here, Rodriguez argues that his "medical issues, the length of his sentence . . ., his advanced age, his good behavior . . ., and his rehabilitative efforts since incarceration combine to create extraordinary and compelling reasons justifying a reduction in his sentence." (Doc. 87 at 10.) Because he is incorrect and he poses a danger to the community under 18 U.S.C. § 3142(g), his motion is denied.

## I.   Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Rodriguez made two requests to the warden of his facility for early release that were denied. (*See* Docs. 86-7, 86-8, 86-9.) He has therefore exhausted his administrative remedies as required by statute.

## II.     Extraordinary and Compelling Reasons

As mentioned above, Rodriguez argues that his medical issues, the length of his sentence, his advanced age, his good behavior, and his rehabilitative efforts since incarceration combine to create extraordinary and compelling reasons justifying a reduction in his sentence.[1] While the First Step Act does not define "extraordinary and compelling reasons," the Sentencing Guidelines include policy statements outlining specific requirements. *See* USSG §1B1.13. Considering Rodriguez's arguments in the context of those policy statements, he has not shown extraordinary and compelling reasons for early release.

### A.      Medical Issues

Extraordinary and compelling circumstances may exist if "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility and from which he or she is not expected to recover." §1B1.13(b)(1)(B)(i). Here, Rodriguez had a stroke in 2019 and "suffers from arthritis in both knees, bursitis in his left shoulder, has spondylothesis [sic], lumber facet arthritis, discogenic sclerosis, hypertension[,] and glaucoma." (Doc. 87 at 12;

---

[1] In his pro se motion, Rodriguez also argues that family circumstances support his request, citing the need to care for his minor children. (*See* Doc. 72 at 7.) That argument was not pursued in his amended motion, (Doc. 84), and is not considered here.

3

*see generally* Doc. 86-3.) Because of these medical conditions, he is subject to certain work restrictions (weightlifting and climbing limits) and provided with special accommodations ("short line" for cafeteria and "lower bunk" for housing status). (Doc. 86-3 at 50.) But, as recognized by Rodriguez, these medical conditions on their own do not rise to the level of extraordinary and compelling. To the contrary, the record shows both that he has been able to engage in self-care and that the BOP has been accommodating his needs. (*See generally* Doc. 86-3.) For example, he has received consistent medical, vision, and dental care, as well as medications for his pain, hypertension, and glaucoma. (*See id.*) Accordingly, Rodriguez's medical condition does not support a finding of extraordinary and compelling either in isolation or when considered in conjunction with the additional grounds discussed below.

**B.     Length of Sentence**

"If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after a full consideration of the defendant's

4

individualized circumstances." §1B1.13(b)(6). That is not the case here.

Rodriguez received a custodial sentence of 300 months on two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. 56 at 2 ("This consists of 300 months on each of Counts 1 and 2, concurrent, for a total of 300 months.").) He argues that this "exceeds the 184[-month] average or 180[-]month median sentences imposed on individuals" between 2020 and 2024 that had the same total offense level and criminal history category (34, VI). (Doc. 87 at 12 (citing Doc. 86-10).) However, Rodriguez is not so easily compared with other offenders as he received a sentencing enhancement under 21 U.S.C. § 851. (*See* Doc. 48 at 3.) Data from the Sentencing Commission indicates that offenders that received an enhanced penalty under 21 U.S.C. § 851 were sentenced an average to a term of 19 years (225 months), which was approximately twelve years longer than those against whom an § 851 information was not filed (86 months). See U.S. Snt'g Comm'n, *Application & Impact of 21 U.S.C. § 851: Enhanced Penalties for Federal Drug Trafficking Offenders*, at 7 (July 2018) (analyzing data from 2016). Additionally, while Rodriguez is correct that career offender designations have undergone serious changes since he was sentenced, uncertainty as to his status under the current law is not the same as showing that he would not be designated a career offender if sentenced today. (*See* Doc. 87 at 13–14.) To the contrary, Rodriguez recognizes that the most relevant authority rejected challenges

5

made on similar grounds. (*See id.* at 14–15.) The length of Rodriguez's sentences therefore does not show extraordinary and compelling circumstances.

## C. Age

Extraordinary and compelling circumstances may exist if "[t]he defendant . . . is at least 65 years old; . . . is experiencing a serious deterioration in physical or mental health because of the aging process; and . . . has served at least 10 years or 75 percent of his . . . term of imprisonment, whichever is less." §1B1.13(b)(2). Here, Rodriguez is not yet 65 years old, (*see* PSR at 3), and he has not shown a serious deterioration of his physical health based on this age. Rather, as discussed above, Rodriguez has shown the existence of discrete medical conditions that are being addressed by the BOP.

## D. Rehabilitation and Cumulative Impact

"[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for the purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." §1B1.13(d). There is also a catchall provision under § 1B1.13 that provides that a defendant can meet the extraordinary and compelling standard if he can show "any other circumstances or combination of circumstances that, when considered by

themselves or together with any of the reasons described [above], are similar in gravity to those described [above]." §1B1.13(b)(5).

Here, Rodriguez argues that the conditions described above, when considered in combination with his rehabilitation, show extraordinary and compelling circumstances. Not so. While BOP records indicate that Rodriguez has a positive disciplinary record, (Doc. 86-6), he has only taken 13 educational courses since he entered BOP in 2010 and, of those, all but one happened prior to 2018, (Doc. 86-5). This rehabilitative record is indeed a bit unique, but for the dearth of programming, not its abundance.

Based on the foregoing, Rodriguez has failed to show extraordinary and compelling reasons for early release. But even if he had, the Court must also find that he does not pose a danger to the community, which it cannot based on Rodriguez's prior conduct and criminal history.

## III. Dangerousness under 18 U.S.C. § 3142(g)

Pursuant to USSG §1B1.13(a)(2), compassionate release is only appropriate if "the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g)." The factors to be considered in assessing dangerousness include the nature and circumstances of the defendant's offense; the weight of the evidence against the defendant; the nature and seriousness of the danger to any person or the community posed by the defendant's

7

release, and the defendant's history and characteristics, including "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history." 18 U.S.C. § 3142(g).

Here, while Rodriguez was convicted of drug distribution, he was only held accountable for 42.9 grams of actual methamphetamine. (*See* PSR ¶¶ 8–12.) While not insignificant, that drug quantity is relatively low when compared to other drug offenders. *See* U.S. Snt'g Comm'n, *2024 Sourcebook*, Table D-10 (indicating that the average drug offender with a base offense level 30 possessed an average of 84.2 grams). Thus, the facts of his current conviction alone do not show that he is a danger to the community that could not be mitigated by supervision and drug testing. However, Rodriguez's prior conduct on supervision and criminal history compel the conclusion that he poses such a danger.

Like many drug offenders, Rodriguez's criminal history reflects a revolving door of drug offenses tied to addiction. However, more concerningly, Rodriguez's criminal history began in 1979 at the age of 17, when he was convicted of deliberate homicide for beating a man's "head on the concrete floor." (PSR ¶ 28.) Following that, his parole was revoked multiple times for failing to report to his probation officer, using controlled substances, and violating local laws. (PSR ¶ 28.) He was then convicted for criminal sale of dangerous drugs in 1988, (PSR

¶ 29); several misdemeanors in the early-1990s for driving under the influence, assault, and domestic abuse, (PSR ¶¶ 30–32); criminal possession of dangerous drugs in 1999, (PSR ¶ 33); numerous misdemeanors in 2005 for obstructing an officer, criminal mischief, and criminal possession of drug paraphernalia, (PSR ¶¶ 34–35); and failing to register as a violent offender in 2007, (PSR ¶ 36). While Rodriguez argues that his advancing age and the time he has spent incarcerated make him less of a risk to the community, neither argument is supported by this record.

Federal sentencing statistics indicate that the recidivism rate of offenders begins to drop once offenders reach their mid-thirties, U.S. Snt'g Comm'n, *Older Offenders in the Federal System*, at 3 (July 2022) ("*Older Offenders*"). However, Rodriguez was 47 years old when sentenced on the present offense, (PSR at 3), and has a criminal history category of VI (with or without the career offender enhancement), (PSR ¶¶ 38–39). Both facts distinguish him from the usual case where older offenders pose a lesser risk of violent recidivism. *See Older Offenders*, at 25–26, 43–44. Rodriguez's record also shows poor performance while under supervision, (*see* PSR ¶ 28 (parole revoked twice for, *inter alia*, "failing to report as directed and violating local laws"), ¶ 29 (supervision revoked on allegation "the defendant had absconded supervision, used illegal drugs, and violated local laws")), and that he has taken limited educational courses while

incarcerated, (Doc. 86-5 (reflecting only 13 courses over the last 15 years and only 1 course in the last eight years)).

Based on Rodriguez's criminal history and poor performance on supervision, early release is not appropriate under § 3142(g). *Compare with United States v. Cain*, 2024 WL 3950641, at *5–6 (W.D. Wash. Aug. 27, 2024) (finding that defendant who had been incarcerated for 22 years may no longer pose a threat to community but highlighting the fact he took numerous educational courses while in custody and would be subject to supervision).

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Rodriguez's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 72, 84) is DENIED.

DATED this 28th day of July, 2025.

Susan P. Watters, District Judge
United States District Court